IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES D. FARDEN,

    Plaintiff,

v.                                                                                                    1:17-cv-00704-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Charles D. Farden's Motion to Reverse or Remand Administrative Agency Decision and Memorandum Brief (Doc. 24), which was fully briefed on May 30, 2018. *See* Docs. 26, 29, 30. The parties consented to my entering final judgment in this case. Doc. 16. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to consider the objective testing that supported consultative psychiatrist Dr. Michael Gzaskow's opinions. I therefore GRANT Mr. Farden's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Farden was born in 1967, completed one year of college, and worked as a delivery driver, repair technician, field service technician, and information technology technician. AR 164, 187–88.[3] He filed an application for Disability Insurance Benefits ("DIB") on April 10, 2014, alleging disability since December 15, 2011 due to type 2 diabetes, neuropathy, anxiety, depression, arthritis, high blood pressure, high cholesterol, asthma, sleep apnea, and obesity. AR 164–70, 186. The Social Security Administration ("SSA") denied his claim initially on

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 19-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

September 6, 2014. AR 103–07. The SSA denied his claims on reconsideration on April 9, 2015. AR 109–12; Doc. 19-1 at 2. Mr. Farden requested a hearing before an ALJ. AR 113–14. On May 17, 2016, ALJ Michelle K. Lindsay held a hearing. AR 33–65. ALJ Lindsay issued an unfavorable decision on November 21, 2016. AR 11–32.

At step one, the ALJ found that Mr. Farden had not engaged in substantial, gainful activity December 15, 2011, his alleged onset date. AR 16. At step two, the ALJ found that Mr. Farden suffered from the severe impairments of diabetes mellitus with peripheral neuropathy; morbid obesity; obstructive sleep apnea; mood disorder with mixed anxiety and depression; generalized anxiety disorder; and depressive disorder (unspecified). *Id.* At step three, the ALJ found that none of Mr. Farden's impairments, alone or in combination, met or medically equaled a Listing. AR 17–19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Farden's RFC. AR 19–25. The ALJ found Mr. Farden had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except that he requires the use of a cane when walking, can only occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, and can never climb ladders, ropes, or scaffolds. He must avoid more than occasional exposure to extreme heat or cold, and must completely avoid unprotected heights and hazardous machinery. The claimant is able to understand, remember, and carry out simple instructions, and is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task. He can have only occasional contact with the general public, and only superficial interactions with co-workers and supervisors. He requires work involving no more than occasional change in the routine work setting.

AR 19.

At step four, the ALJ concluded that Mr. Farden was unable to perform his past relevant work as a medical equipment preparer, sales route driver, hospital food service worker, or respiratory therapist aide. AR 25. The ALJ found Mr. Farden not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as small item inspector, table worker, and small product assembler. AR 26.

On February 3, 2017, Mr. Farden requested review of the ALJ's unfavorable decision by the Appeals Council. AR 10. On May 2, 2017, the Appeals Council denied the request for review. AR 1–3. Mr. Farden timely filed his appeal to this Court on July 6, 2017.[4] Doc. 1.

**IV.    Mr. Farden's Claims**

Mr. Farden raises two arguments for reversing and remanding this case: (1) the ALJ failed to adequately consider the objective testing and signs that supported consultative psychiatrist Dr. Gzaskow's opinions; (2) the Appeals Council erred in refusing to consider new, material, chronologically relevant evidence. *See* Doc. 24. For the reasons discussed below, I find that the ALJ erred in weighing Dr. Gzaskow's opinions, and remand on this basis. I do not address the other alleged error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.     Analysis**

    **A. The ALJ failed to adequately consider the objective testing that supported consultative psychiatrist Dr. Gzaskow's opinions.**

Mr. Farden argues that the ALJ erred in discounting the opinions of consultative psychiatrist Dr. Michael Gzaskow without first considering the objective testing that supported his opinions. Doc. 24 at 5–10. He argues that the ALJ erred in finding that Dr. Gzaskow based his opinion exclusively on his subjective complaints. *Id*. at 9. Specifically, Mr. Farden argues that the ALJ "never mentioned that Dr. Gzaskow had . . . administered the PHQ-9 and CES-D testing." *Id*. at 8. The Commissioner argues that it was "entirely reasonable for the ALJ to reject this portion of Dr. Gzaskow's opinions, which were, *on their face* . . . based on Plaintiff's

---

[4] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

subjective complaints to the doctor." Doc. 26 at 10. For the reasons discussed below, I agree with Mr. Farden.

Dr. Gzaskow conducted two in-person mental status examinations of Mr. Farden. His opinions are therefore considered "examining medical-source opinion[s]." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); *see also* 20 C.F.R. § 404.1527(c)(1) (effective Aug. 24, 2012 to March 26, 2017). Such opinions are "given particular consideration" in that they are "presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo*, 682 F.3d at 1291. An examining medical-source opinion "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the . . . regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id*. (internal citation and quotation omitted).

An ALJ must consider six factors in deciding what weight to give a medical source opinion:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. § 404.1527(c)(1)–(6) (effective Aug. 24, 2012 to March 26, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003)). Giving an opinion "little weight" is the same as rejecting the opinion. *Chapo,* 682 F.3d at 1291. If rejecting a medical opinion, the ALJ must "provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted). The duty to supply such reasons is the ALJ's; neither the Commissioner nor the Court may supply post-hoc reasons that the ALJ did not provide. *See Krauser*, 638 F.3d at 1330.

When assessing a psychological opinion, an ALJ must remember that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)); *see also Langley*, 373 F.3d at 1122 (same). An ALJ cannot reject the opinion of a consulting psychiatrist "solely for the reason that it was based on [a claimant's responses to psychological tests] because such rejection impermissibly substitutes" the ALJ's judgment for that of the doctor. *Thomas*, 147 F. App'x at 760; *see also Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir. 1996) (finding ALJ "clearly overstepped" his bounds and improperly "substituted his medical judgment" for that of the examining psychologist in finding that psychologist improperly relied on the results of psychological testing in making a diagnosis).

Dr. Michael Gzaskow, a board-certified psychiatrist, conducted two consultative exams of Mr. Farden—on August 18, 2014 and on April 2, 2015. AR 339–42, 656–59. At each exam, Dr. Gzaskow conducted an interview and a mental status exam. *Id.* At each exam, he administered two psychological tests used to measure depression: (1) a PHQ-9/Patient Health Questionnaire form and (2) a CES-D scale/NIMH. AR 343, 660.

The PHQ-9 "is one of the most validated tools in mental health and can be a powerful tool to assist clinicians with diagnosing depression and monitoring treatment response. The nine items of the PHQ-9 are based directly on the nine diagnostic criteria for major depressive disorder in the DSM-IV." AIMS CENTER, *Advancing Integrated Mental Health Solutions, PHQ-9 Depression Scale*, available at https://aims.uw.edu/resource-library/phq-9-depression-scale (last visited Jan. 7, 2019). The PHQ-9 may be used "as a screening tool, an aid in diagnosis, and as a symptom tracking tool that can help track a patient's overall depression severity as well as track the improvement of specific symptoms with treatment." *Id.* Studies have shown the PHQ-9 to be a "reliable and valid measure of depression severity." Kurt Kroenke, MD, Robert L. Spitzer, MD, and Jane Williams, DSW, *The PHQ-9 Validity of a Brief Depression Severity Measure*, J. GEN. INTERN. MED., Sept. 16, 2001, at 606–13.[5] The "[r]eliability and validity of the [PHQ-9] have indicated it has sound psychometric properties." AMERICAN PSYCHOLOGICAL ASSOCIATION, Patient Health Questionnaire (PHQ-9 & PHQ-2).[6]

The Center for Epidemiologic Studies Depression Scale ("CES-D") is "a brief self-report scale designed to measure self-reported symptoms associated with depression experienced in the

---

[5] Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ (last visited Jan. 7, 2019).

[6] Available at https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health.aspx (last visited Jan. 7, 2019).

past week. The items of the scale are symptoms associated with depression which have been used in previously validated longer scales." MEASUREMENT INSTRUMENT DATABASE FOR THE SOCIAL SCIENCES, *Center for Epidemiologic Studies–Depression Scale (CES-D)*, available at http://www.midss.org/content/center-epidemiologic-studies-depression-scale-ces-d (last visited Jan. 7, 2019). The CES-D "includes twenty items comprising six scales reflecting major facets of depression: depressed mood, feelings of guilt and worthlessness, feelings of helplessness and hopelessness, psychomotor retardation, loss of appetite, and sleep disturbance." *Id*. The CES-D has been shown to be a reliable measure for assessing the number, types, and duration of depressive symptoms across racial, gender, and age categories. AMERICAN PSYCHOLOGICAL ASSOCIATION, Center for Epidemiological Studies–Depression, available at https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/depression-scale.aspx (last visited Jan. 7, 2019).

At the August 18, 2014 exam with Dr. Gzaskow, Mr. Farden scored a 23/27 on the PHQ-9. AR 343. Scores between 20 and 27 indicate "severe depression." The Patient Health Questionnaire (PHQ-9)-Overview, available at www.cqaimh.org/pdf/tool_phq9.pdf (last visited Jan. 7, 2019). At this exam, Mr. Farden also scored a 45/60 on the CES-D. *Id*. Scores of at least 16 on the CES-D are indicative of depression, with higher scores indicating greater depression. *BioPsychoSocial Assessment Tools for the Elderly-Assessment Summary* Sheet, available at https://instruct.uwo.ca/kinesiology/9641/Assessments/Psychological/CES-D.html (last visited Jan. 7, 2019). Dr. Gzaskow diagnosed Mr. Farden with a "[m]ood disorder with depression/anxiety ratio of 50/50 secondary to multiple medical issues as detailed above"; "general anxiety disorder NOS [not otherwise specified]" and "depressive disorder NOS." *Id*. Dr. Gzaskow found that Mr. Farden had the following limitations:

1. The claimant can relate to others, but this is compromised by his irritable depression/anxiety with low self-image and fragile diabetic/medical condition.

2. He can understand directions in a structured/supportive environment but indicates he can no longer follow through in a productive manner due to his fragile physical state and psychological issues as detailed above.

3. He can attend to simple tasks.

*Id*.

At the April 2, 2015 visit with Dr. Gzaskow, Mr. Farden scored a 25/27 on the PHQ-9, again indicating severe depression. AR 660. At this exam, Mr. Farden scored a 22/60 on the CES-D. *Id*. Dr. Gzaskow noted that Mr. Farden was "alert and cooperative" throughout the consultative exam, "thus making his testing/mental status valid." AR 656. He noted that Mr. Farden had a cooperative attitude "with no attempts to be evasive as he shared his past history openly and confirmed data attached." AR 658. Dr. Gzaskow also noted that Mr. Farden's PHQ-9 included a "self-rating of extremely difficult in terms of potential problems at work, taking care of things at home, or getting along with other people." AR 660. Dr. Gzaskow diagnosed Mr. Farden with "[m]ood disorder secondary to general medical conditions as noted above, with anxiety/depression ratio of 50/50"; "general anxiety disorder NOS" and "depressive disorder NOS." AR 659. Dr. Gzaskow found that Mr. Farden had the following limitations:

1. The claimant can relate to others, but this is often compromised by his depressive isolation/withdrawal, feelings of helplessness, hopelessness, and uselessness.

2. He can understand directions in a structured/supportive environment but can no longer follow through due to his physical and psychological problems as detailed above.

3. He can attend to simple tasks.

*Id*.

The ALJ gave "little weight" to both of Dr. Gzaskow's opinions. AR 23. The ALJ summarized some of Dr. Gzaskow's findings. *Id.* However, the only explanation the ALJ provided for rejecting Dr. Gzaskow's opinions was as follows:

> Regarding both psych consultative examinations, Dr. Gzaskow indicated that the claimant can relate to others, but his ability in this area is compromised, but not eliminated. He also indicated that the claimant could understand directions in a structured supportive environment, but can no longer follow through. However, Dr. Gzaskow based this opinion exclusively on the claimant's statements that "he can no longer follow through," and not on findings corroborated by medical records. In addition, the statement is not consistent with either of Dr. Gzaskow's own exams, which showed no deficits in memory, or general intellectual functioning.

*Id.*

The ALJ failed to "provide specific, legitimate reasons for rejecting" Dr. Gzaskow's opinion. *Doyal*, 331 F.3d at 764.[7] The ALJ's claim that Dr. Gzaskow based his opinion "exclusively" on the claimant's statements is not supported by the record. Dr. Gzaskow based his opinions in part on psychological testing he administered—the PHQ-9 and the CES-D—as well as on his examinations of Mr. Farden. As Mr. Farden points out, the ALJ failed to mention the objective tests Dr. Gzaskow administered, and "ignored Dr. Gzaskow's statement that the testing had produced valid results and that Mr. Farden showed no attempts at being evasive and shared his history openly." Doc. 24 at 8. Dr. Gzaskow noted that Mr. Farden was "alert and cooperative" throughout the consultative exam, and the "testing/mental status" was thus valid. AR 656. The ALJ did not discount the psychological testing done by Dr. Gzaskow; she did not

---

[7] The Commissioner argues that the ALJ did not reject all of Dr. Gzaskow's opinions, and that the ALJ's RFC "accounts for Dr. Gzaskow's opinion that [Mr. Farden] should be limited to simple tasks and had a limited ability to relate to others." Doc. 26 at 9. The Commissioner argues that the ALJ only "gave the remainder of Gzaskow's opinions little weight." *Id.* However, the ALJ gave "little weight" to both of Dr. Gzaskow's opinions in their entirety. AR 23. The ALJ did not state that she credited any part of the opinions. *See id.*

11

even acknowledge that testing was done. The ALJ erred by completely ignoring the objective evidence from Dr. Gzaskow's examinations. "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective 'tests'; those findings may rest either on observed signs and symptoms or on psychological tests." *Thomas*, 147 F. App'x at 759 (internal citation and quotations omitted). As in *Thomas*, the ALJ here rejected the opinion of the examining, consultative psychiatrist "solely for the reason that it was based on [a claimant's responses to psychological tests and] such rejection impermissibly substitute[d]" the ALJ's judgment for that of the doctor. *Id*. at 759–60. *See also Jones v. Colvin*, No. 2:15-CV-00516-EJF, 2016 WL 4442791, at *4 (D. Utah Aug. 22, 2016) (finding ALJ erred in failing to discuss objective clinical or diagnostic findings, which included a PHQ-9 test).

While the Commissioner argues that the ALJ also rejected Dr. Gzaskow's opinion because it was not consistent with his own exams, the Court does not find this argument persuasive. The ALJ stated that Dr. Gzaskow's opinions are not consistent with his own exams "which showed no deficits in memory, or general intellectual functioning." AR 23. However, the ALJ does not explain how these are "not consistent." The Court does not see any obvious way in which Dr. Gzaskow's exams and opinions are inconsistent. Dr. Gzaskow opined that Mr. Farden "can **understand** directions in a structured/supportive environment but can no longer **follow through** due to his physical and psychological problems as detailed above." AR 659 (emphasis added).[8] The ability to understand and to carry out are two separate mental activities.

---

[8] The Commissioner argues that Dr. Gzaskow found Mr. Farden "could only understand directions in a structured/supportive environment **based on** [Mr. Farden's] 'indicat[ion] he can no longer follow through in a productive manner due to his fragile physical state and psychological issues." Doc. 26 at 9 (emphasis added). Dr. Gzaskow's opinions, however, do not contain the causal language used by the Commissioner. Instead, Dr. Gzaskow asserts two

*See* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, **and** remember instructions . . . ."); *see also* Mental Residual Functional Capacity Assessment, SSA-4734-F4-SUP (remembering and understanding are in the category of "understanding and memory," while the ability to "carry out" instructions is in the category of "sustained concentration and persistence"). In addition, the ALJ failed to address Dr. Gzaskow's finding that Mr. Farden could only understand directions in a "structured/supportive environment."

Finally, the Court does not find the cases cited by the Commissioner persuasive. None of the cases cited by the Commissioner address an ALJ's complete failure to consider the objective testing supporting a doctor's opinion. In *Flaherty*, the Tenth Circuit found that the ALJ reasonably discounted a consultative examiner's opinion about the severity of the claimant's migraines when his opinion was based on a "single, subjective report" given to him by the claimant. *Flaherty*, 515 F.3d at 1070. However, the doctor in *Flaherty*, unlike Dr. Gzaskow in this case, did not administer any testing. *See id.* at 1070−71. In *Sanchez v. Berryhill*, 16cv1160-KK, 2018 WL 1064570, at *9–*10 (D.N.M. Feb. 23, 2018), the ALJ rejected a consultative

---

separate limitations in the same sentence. *See* AR 343 (Mr. Farden "can understand directions in a structured/supportive environment **but** indicates he can no longer follow through in a productive manner due to his fragile physical state and psychological issues as detailed above"); AR 659 (Mr. Farden "can understand directions in a structured/supportive environment **but** can no longer follow through due to his physical and psychological problems as detailed above.") (emphases added). In short, in Dr. Gzaskow's opinion, Mr. Farden is limited in both his ability to understand instructions as well as his ability to carry out instructions, and neither limitation was causally related to the other.

The Commissioner also argues that the ALJ "found that Dr. Gzaskow based [his opinions] on [Mr. Farden's] own statements that he could no longer follow through. . . ." Doc. 26 at 9. The Court does not agree. Dr. Gzaskow's second opinion, in particular, includes a limitation on Mr. Farden's ability to follow through that is not connected to Mr. Farden's subjective reports. Although the Commissioner argues that "there is nothing to indicate that the second similar opinion was based on anything other than Plaintiff's subjective reports," Doc. 26 at 10 n.5, this ignores Dr. Gzaskow's examination and testing of Mr. Farden. *See* AR 658−60.

examiner's opinion in part because it was based on the claimant's subjective complaints. However, the doctor in *Sanchez* did not administer any testing—unlike Dr. Gzaskow did in this case. If the ALJ wishes to discount Dr. Gzaskow's opinion based on lack of support, she must discuss the testing Dr. Gzaskow administered. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Similarly, the ALJ cannot discount the validity of the psychological testing Dr. Gzaskow administered without discussing it. Finally, while the doctors in the other two cases cited by the Commissioner performed objective testing, unlike this case, the ALJs in those cases discussed the testing before weighing the medical opinions. *See White v. Barnhart*, 287 F.3d 903, 907–08 (10th Cir. 2001); *Romanczuk v. Colvin*, 15cv401-KK, 2016 WL 8230700, at *8 (D.N.M. July 1, 2016). Unlike the instant case, the ALJs in those cases "provide[d] specific, legitimate reasons" for discounting the doctors' opinions. *Doyal*, 331 F.3d at 764.

## VI. Conclusion

The ALJ failed to adequately consider the objective testing that supported consultative psychiatrist Dr. Gzaskow's opinions. The Court remands so that the ALJ can remedy this error. The Court does not reach Mr. Farden's other argument, which "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 24) is GRANTED.

14

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent